105 F.3d 664
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Richard CHANG, Plaintiff-Appellant,
v.
MCDONALD'S CORPORATION, Defendant-Appellee.
 No. 95-16012.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 4, 1996.
Decided Dec. 19, 1996.
 
 1
 Before SKOPIL and FLETCHER, Circuit Judges, and KING, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Richard Chang operates a McDonald's restaurant in Pinole, California pursuant to a license agreement with McDonald's Corporation. He alleges in this diversity action that McDonald's breached the agreement by opening two restaurants nearby and by refusing to renew his license agreement. The district court granted McDonald's motion for summary judgment, concluding that Chang has no contractual rights, express or implied, to an exclusive market area or renewal of the agreement. We affirm.
 
 
 4
 Pursuant to the license agreement, we apply Illinois law. That law provides that in instances of contract interpretation, we look first to the express language of the parties' agreement. Quake Constr., Inc. v. American Airlines, Inc., 565 N.E.2d 990, 994 (Ill.1990). The express language of this agreement states that:
 
 
 5
 (a) the term of this License terminate[s] October 19, 1996 with no promise or representation as to the renewal of this License or the grant of a new License;
 
 
 6
 * * *
 
 
 7
 (e) [t]his License establishes a Restaurant at the location specified ... [and] no 'exclusive,' 'protected' or other territorial rights in the contiguous market area ... is hereby granted or inferred.
 
 
 8
 (emphasis added). We agree with the district court that based on these contractual provisions, Chang has no express rights to an exclusive market area or renewal of the franchise.
 
 
 9
 Chang argues that we should nevertheless consider McDonald's written policies on opening new restaurants and renewing franchise agreements. He contends that these policies are expressly incorporated into his license agreement. Specifically, Chang relies on a statement in the agreement that "the essence of this License is the adherence by Licensee to standards and policies of Licensor," a provision requiring "strict adherence to Licensor's standards and policies as they exist now and as they may be from time to time modified," and a requirement that McDonald's "make available to Licensee all additional services, facilities, rights and privileges which Licensor makes generally available ... to all its licensees."
 
 
 10
 Chang takes this language out of context. We agree with the district court that these provisions, when read in context, refer only to the obligations of the parties relating to the details of restaurant operation, such as food service and the supplying of standardized equipment. The provisions do not indicate that the parties intended to incorporate by reference other documents regarding McDonald's expansion and renewal policies. See Jago v. Miller Fluid Power Corp., 615 N.E.2d 80, 82 (Ill.App.Ct.1993) (contract may incorporate by reference another document only if the intent to do so is clear on the face of the contract).
 
 
 11
 Moreover, the license agreement contains an integration clause providing that the agreement "constitutes the entire agreement between the parties and supersedes all prior and contemporaneous, oral or written, agreements or understandings of the parties." Therefore, "[p]arol or extrinsic evidence may not be introduced to show additional consistent terms of [the] contract unless the writing is incomplete or ambiguous." Geoquest Prods., Ltd. v. Embassy Home Entertainment, 593 N.E.2d 727, 730 (Ill.App.Ct.1992). We conclude that the license agreement is neither incomplete nor ambiguous.
 
 
 12
 Finally, even if we assume that McDonald's written policies regarding renewal and expansion are somehow incorporated into the license agreement, those policies also make clear that McDonald's franchisees have neither a right of renewal nor a right to an exclusive market area. We therefore conclude, as did the district court, that Chang did not bargain for exclusive territorial rights or for renewal. See Patel v. Dunkin' Donuts of America, Inc., 496 N.E.2d 1159, 1161 (Ill.App.Ct.1986) (rejecting franchisee's claim that an exclusive territorial provision could be implied when none existed in the agreement).
 
 
 13
 Chang alternatively argues that McDonald's conduct breached an implied covenant of good faith and fair dealing. He relies principally on Scheck v. Burger King Corp., 756 F.Supp. 543, 549 (S.D.Fla.1991), where the district court concluded that the implied covenant of good faith and fair dealing applied to Burger King's decision to open a new store in Scheck's market area even though the agreement expressly denied Scheck an exclusive market area. The court reasoned that the denial of an exclusive market area did not necessarily imply the right of Burger King to open other franchises at will regardless of their effect on franchisee's operations. Id. Although the rationale of Scheck is compelling, it conflicts with Illinois law.
 
 
 14
 In Illinois, the covenant of good faith and fair dealing is not an independent source of duties, but instead "guides the construction of explicit terms in an agreement." Beraha v. Baxter Health Care Corp., 956 F.2d 1436, 1443 (7th Cir.1992) (emphasis added). The covenant is essentially used to determine the intent of the parties when a contract is ambiguous. See Saunders v. Michigan Ave. Nat'l Bank, 662 N.E.2d 602, 609 (Ill.App.Ct.), appeal denied, 667 N.E.2d 1063 (Ill.1996). The covenant requires that a party vested with contractual discretion "exercise that discretion reasonably and with proper motive, and may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." Dayan v. McDonald's Corp., 466 N.E.2d 958, 972 (Ill.App.Ct.1984).
 
 
 15
 Chang complains that McDonald's conduct is inconsistent with his reasonable expectations under the license agreement. We conclude, however, that the express agreement between these parties controls what expectations are reasonable. The contract provisions are clear that McDonald's is under no obligation to renew Chang's agreement or to reserve an exclusive territory for him. The contract thus negates any inference that McDonald's actions were so far outside the parties' reasonable expectations as to constitute a breach of the implied covenant. See Saunders, 662 N.E.2d at 610.
 
 
 16
 We must therefore reject Chang's contention that the implied covenant can overrule or modify the express terms of the license agreement. See Resolution Trust Corp. v. Holtzman, 618 N.E.2d 418, 424 (Ill.App.Ct.1993) ("Express covenants abrogate the operation of implied covenants so courts will not permit implied agreements to overrule or modify the express contract of the parties."). Because the contract terms here clearly and unambiguously provide that McDonald's is under no obligation to renew the agreement or to refrain from opening restaurants nearby, Chang's reliance on the implied covenant is unavailing.
 
 
 17
 AFFIRMED.
 
 
 
 *
 The Honorable Samuel P. King, United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3